BOARD OF COMMISSIONERS OF MIAMI COUNTY *v.*
SHIRLEY KLEPINGER

[No. 370A35   Filed September 15, 1971.   Rehearing denied October 18,
1971.   Transfer denied April 7, 1972.]

*Russel J. Wildman, James A. Grund,* of Peru, for appellants.

*J. Conrad Maugans, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellee.

STATON, J.—This is an appeal from the Fulton Circuit Court. A verdict was returned by the jury for the plaintiff-appellee and against the defendant-appellant for Twenty Thousand Dollars ($20,000.00).

The plaintiff-appellee and her husband were returning home from a visit with relatives on Easter Sunday, April 10, 1966 at approximately 6:30 P.M., when the automobile being driven by the plaintiff-appellee's husband, on Strawtown Pike in Miami County went into an open trench approximately five (5) inches deep upon a bridge. Plaintiff-appellee suffered injuries to her back.

On Thursday before the accident happened, appellant-defendant had learned that a hole had developed in a small portion of the bridge floor and commenced repairs on Friday. The bridge was a single lane bridge 130 feet long and only 16 feet in width and the repairs to be made were near the south end of the bridge. In making these repairs, the top five or six inches of the flooring was removed across the entire width of the bridge. This removal left a trench five or six inches below the top of the flooring not being repaired, and some five to eight feet wide measuring from north to south. Across this trench, appellant-defendant had placed treadway planks for automobiles to cross over the trench and avoid driving into the trench. The top of these planks were level with that portion of the traveled surface of the bridge which had not been removed. Each plank was twenty-four inches in width and so spaced that the wheels of an automobile would be in the center of the planks, if the automobile was driven across the bridge on the treadway planks.

The plaintiff-appellee has made a motion that the appeal be dismissed or affirmed for the reason that the defendant-appellant included in his appeal transcript only a motion for a new trial. Under the new Indiana Rules of Procedure, Rule AP 7.2 (A), a motion to correct errors or an assignment of errors is required. This court feels that it should be guided by Trial Rule 84 which provides as follows:

"These rules will take effect on January 1, 1970. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies."

We are of the opinion that to sustain the plaintiff-appellee's motion would work a manifest injustice. The new rule came into effect after the defendant-appellant had filed a motion for a new trial in strict compliance with the old rules.

Appellant-defendant cites as error the giving of appellee-plaintiff's Instruction Number Eight, which is as follows:

## PLAINTIFF'S INSTRUCTION NO. 8

"There was in force a statute of the State of Indiana, which provided in pertinent part as follows: 'Whenever, in the opinion of any board or county commissioners, the use of any public county highway or highways shall be or will become impracticable or unsafe because of obstructions or interruptions resulting from erosion, changes in natural or artificial drains, or any other cause of any kind or nature whatsoever, the said board of county commissioners of the county wherein such highway or highways is located, or the board of county commissioners of adjoining counties acting together, if the obstructed or interrupted part thereof is located upon a county line or extends from one county to another, shall have the power to close said highway or highways, or the necessary parts thereof, and divert traffic therefrom by suitable detours, if in their judgment such detours are necessary, until such time as the conditions causing such obstruction or interruption no longer exists and the continued use of said highway or highways become practicable and safe.'

"If you find from a preponderance of the evidence that the defendant violated the statutes on the occasion in question and that the violation was without excuse or justification, such conduct would constitute negligence on the part of the defendant."

We agree with the appellant-defendant that the giving of the appellee-plaintiff's instruction Number Eight was error.

The statute embodied in the instruction above is IC 1971, 8-1-23-1, Ind. Ann. Stat., § 36-716 (Burns 1949). A careful examination of this statute shows that its intent is to confer upon the county commissioners the police power "to close" county highways, when in their opinion and judgment such "public county highway or highways" shall be or will become impracticable or unsafe. . . ." The county commissioners further "have the power" to leave said highways in a closed or detour condition "until such time as the conditions causing such obstruction or interruption no longer exists and the continued use of highway or highways becomes practicable and safe." The general safety and welfare of the public is secondary or incidental to this statute. The terms and language of the statute is exceedingly general in nature: ". . . [I]n the opinion of any board of county commissioners, the use of any public county highway or highways shall be or will become impracticable or unsafe because of obstructions or interruptions resulting from erosion, changes in natural or artificial drains, or any other cause of any kind or nature whatsoever, . . . the board of county commissioners . . . shall have the power to close said highway or highways, or the necessary parts thereof, and divert traffic therefrom by suitable detours, if in their judgment such detours are necessary, . . . the continued use of said highways or highways become practicable and safe." For the purpose of illustration only, we set out a statute pertaining to weeds on county highways, which is found in IC 1971, 8-17-14-1, Ind. Ann. Stat., § 36-714 (Burns 1949). This statute deals with specifics and reads as follows:

"Each and every county highway supervisor and the county surveyor and boards of county commissioners of the counties where the county surveyor is charged by law with the supervision and maintenance of county highways, shall cut down or cause to be cut down, and removed from all county highways, by the highway department of the several counties of the state, all briars, thistles, burrs, tree sprouts, docks, willows, sumac, reeds, cat-tails, tall grass, marihuana, Indian or wild hemp or loco weed, shrubs and all other obnoxious growth within the limits of the county

highway rights-of-way between the fifteenth of June and the first day of September in each year."

This statute not only sets forth the kind of "obnoxious growth" to be cut but also the times during which said growth should be cut on the rights-of-way.

When we speak of a civil negligence "violation" in an instruction to a jury, we are speaking of the violation of a specific requirement, specific commission or omission of an act or a single issue of fact. "Violation" may be addressed to an absolute duty imposed by law or a positive and definite standard of care. These statutory categories are sometimes characterized as showing negligence as a matter of law or negligence per se. (See 28 Words and Phrases, *"Negligence per se,"* p. 683).

The difference between negligence and negligence per se when it is a question for the jury is the means and method of ascertainment. In *Swoboda* v. *Brown* (1935), 129 Ohio St. 512, 196 N. E. 274, this distinction was stated by the court as follows:

"The distinction between negligence and 'negligence per se' is the means and method of ascertainment. The first must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance; the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.

Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal, and, if it proximately results in injury to one to whom a legal duty is owned, the transgressor is liable for the resulting damage. In such case, the jury is not called upon to determine whether the conduct constituted negligence; it determines only whether the act prohibited was committed or the act required by law was omitted, as the case may be. The violator of such specific requirement of law is liable,

irrespective of the question as to whether his act is such as is deemed to meet and satisfy the test of ordinary or reasonable care which would be applied in the absence of such statutory definition and imposition of absolute duty, such as, for instance, the absolute and specific requirement as to headlights. Where the standard of duty is thus fixed and absolute, it becomes the same under all circumstances, the failure to observe that requirement is clearly negligence per se. But, where duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination or reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase 'negligence per se' has no application."

The statute quoted in the Instruction Number Eight indicates that any continued use of the bridge, being part of the highway, could only be continued when it became "practicable and safe" and only then in the "judgment" of the commissoiners. Our Supreme Court in *Pittsburgh R. Co.* v. *Indianapolis Traction Co.* (1907), 169 Ind. 634, 81 N. E. 487 stated:

". . . The word practicable, as used in the statute, we think should be given its usual and ordinary meaning as indicated by its context. Plainly it is not synonymous with 'possible.' A thing practicable must necessarily be possible, but a thing may be possible that is not practicable."

The interpretation of a phrase used in a statute where the word practical was used brought forth this comment by the court:

"The phrase 'if the court shall find it practicable' implies a legal discretion, the exercise of judgment based upon the whole evidence of all the facts that affect the question of practicability within the usual and ordinary sense of the word. The question therefore depends upon the circumstances of each particular case. These circumstances may be many and varied. . . ."

It is quite clear that our Supreme Court does not consider the word "practicable" as defining a specific requirement, specific act, an absolute standard of conduct or an absolute duty which can be determined without considering all the facts and circumstances. As indicated in the foregoing decision of our

Supreme Court what is "practicable" may require a judgment on the part of the party making the determination. The statute under consideration clearly states "if in their judgment . . . the conditions causing such obstruction or interruption no longer exists and the continued use of said highway or highways become practicable and safe." We note that the word "safe" is used in conjunction with the word "practicable" and we think that it is reasonable to interpret the meaning of "safe" to mean reasonably safe and not absolutely safe. *Morgan* v. *City of Lewiston* (1898), 40 A. 545, 546, 91 Me. 566. Again, the question as to whether the approach to and passage-way over a bridge, as in the present case, is reasonably safe depends on the circumstances and evidence offered in the particular case. It does not depend under the statute here being considered upon any specific requirement, act, absolute duty or absolute standard of conduct as the appellee-plaintiff's Instruction Number 8 would lead the jury to believe. Upon re-examining the Instruction Number 8, we find it difficult to find any "violation" that a jury could conceive and understand. The instruction uses the word "violation" which would indicate that there is some specific duty, specific act or requirement that is so defined and ascertainable as to be capable of being violated as a matter of law without referring to all of the evidence or circumstances surrounding the accident. An attempt to mitigate this impression in the instruction is made by using the words ". . . such conduct would constitute negligence. . . ." A layman serving on a jury would not be able to determine whether a statute can be "violated" as a matter of law without some further instructions and we find none. Certainly, we cannot assume that a layman on a jury appreciates the distinction between negligence and negligence per se without having the difference explained to him in a simple and comprehensible manner. The word "violate" is a strong and over-powering word when used in an instruction with a statute. Unexplained, it can lead to confusion, misinterpretation and a misstatement of the law.

If the Miami County Commissioners are responsible under this statute for their decision to open the highway, the standard of conduct applied must be the common law standard of due care of a reasonably prudent person. Where there is no specific act, no specific requirement or any absolute duty set out in a statute to be "violated." Therefore, the Commissioners are not liable as a matter of law or negligent per se. Any negligence would have to be shown from all of the facts and circumstances of this particular case to determine whether a reasonably prudent man would have made such a judgment. In *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367, 119 N. E. 2d 440, 443, the court pointed out that: "The view that the violation of a legislative enactment may constitute actionable negligence is predicated upon the principle that when an act is forbidden by expressed provisions of law, an absolute standard of conduct is set up, and one who commits the prohibited act resulting in injury will be deemed to be liable regardless of whether the injury might have been foreseen by a reasonably prudent person." (Court citing *Butts* v. *Ward,* 227 Wisc. 387, 279 N. W. 6, 116 A. L. R. 1441.) There is nothing in Instruction Number 8 which gives an indication that the standard of care applicable to the Commissioners is that of due care of a reasonably prudent person. The only question for the jury is: was the statute violated? It would be easy for a layman on a jury to conclude that if an accident occurred, a "violation" of some sort must have occurred. If the court instructs that there is a statute which could have been "violated" the conclusion for the juror is made much simpler and suggestive. A statute which is the main thrust of an instruction must be correctly applied to the issues and the evidence.

We now turn our attention to the evidence and pleadings. Appellee-plaintiff contends that paragraph four of her complaint justifies the giving of Instruction Number 8. Paragraph four of the complaint reads as follows:

"4. That on the 10th day of April, 1966, Defendant was repairing the said bridge on Strawtown Pike, and the entire traveled part of the said bridge bed was torn up and a trench was left across the entire width of said bridge, and Defendant carelessly and negligently left said bridge in a dangerous condition throughout the day and placed no watchman, guard, barried or sign at or near the same to warn persons lawfully passing with automobiles over and upon [siad] highway and bridge."

There is no mention of the statute in the appellee-plaintiff's complaint nor was the statute ever referred to in the evidence at trial. None of the Commissioners were ever called as witnesses to testify concerning the facts and circumstances which were the basis of their judgment to open the highway over the bridge, nor was any reference made in the record as to how any such judgment was formulated. The statute does not require that a "watchman" be placed at the entrance of the bridge or that a "guard" be placed on either side of the bridge or that a "barrier" or "sign" be placed at or near the bridge to warn persons who might be passing over the highway. None of the specific requirements or acts complained of in appellee-plaintiff's rhetorical paragraph four are set forth in the statute. This contention of the appellee-plaintiff is entirely without merit. Neither the evidence nor the pleadings indicate that the appellee-plaintiff was relying upon the statute set out in Instruction Number Eight.

The appellee-plaintiff's Instruction No. 8 fails the test of a proper instruction. It submits to the jury an issue upon a matter that was not within the pleadings and certainly not within the evidence placed before them. It informs the jury of nothing as to its application to the evidence. A juror being impressed with the submission of a statute by the court could well reason that since an accident had occurred, the statute must have been violated, although he doesn't have the remotest idea how such violation is applicable. A juror must assume that any statute given to him in an in-

struction by the court is a correct statement of the law and should be considered by him in determining and ascertaining the issues.

In *Summers* v. *Weyer* (1967), 141 Ind. App. 176, 178, 226 N. E. 2d 904, this court held in a decision written by Judge Cook that:

"There are no allegations in appellee's complaint of any statutory violations on the part of appellant, nor does the record disclose that any evidence was adduced at trial from which an inference of a statutory violation could be indulged."

This court further concluded in *Summers, supra,* at 179:

"The giving of an insuruction on an issue not supported by the evidence is erroneous; and, 'It is fundamental that instructions to the jury must follow the evidence, and be limited to an exposition of the legal effect upon the issues on trial of the relevant facts before the jury for determination.'" [Court citing *New York Central Railroad Company* v. *Knoll* (1965), 140 Ind. App. 264, 204 N. E. 2d 220, 222, and cases cited therein.]

"Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an over-emphasis placed upon the wording and defined meaning of instructions which far exceed their actual effect upon the jury." *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 230 N. E. 2d 315; see also *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N. E. 2d 923, 20 Ind. Dec. 433. But this is not applicable to an instruction which uses as its main thrust the "violation" of a statute. A statute cannot be reworded nor can its meaning be refined in an instruction. Its application can only be explained and interpreted. The statute stands as an enunciation of the State Legislature and as a law of the state. Instructions gain some degree of eminence by incorporating statutes. Extreme care must be taken to avoid misapplication of a statute to issues and evidence.

When all of the evidence has been presented and the trial

is nearing its conclusion, an effort is made to "refocus" the minds of the jurors so that the law may be properly applied to the issues and evidence. This "refocusing of the mind" and reinforcement of some first impressions is done by the way of instructions to the jury.

Incorporating general and abstract statutory language into an instruction without any correct statement of application is error and must be condemned. Misapplication of statutes is an unavoidable hazard for lawyers and courts alike. It is a hazard that should not be introduced into a jury trial by instructions. This is especially true where the statute has only a remote relevance to the issues and evidence. In the present case, the effect of Instruction Numbr 8 was to obscure the real issues and confuse and mislead the jury.

Judgment reversed with instructions to grant appellant-defendant's motion for a new trial.

Hoffman, C.J., Sharp and White, JJ., concur.

NOTE.—Reported in 273 N. E. 2d 109.