PHYLLIS A. SMITH *v.* KEITH E. COOK, STATE OF INDIANA AND McMAHAN-O'CONNER CONSTRUCTION COMPANY.

[No. 2-775A182. Filed April 6, 1977.]

*W. Richard Herron,* of Elkhart, for appellant.

*J. Conrad Maugans,* of Kokomo, *John T. Hume, III, Smith and Jones,* of counsel, of Indianapolis, *Russell T. Keith, Keith, Berkshire & Keith,* of counsel, of Peru, *Theodore L. Sendak,* Attorney General, *K. Richard Payne, Mark A. Yegerlehner,* Deputy Attorneys General, for appellees.

ROBERTSON, C.J.—The trial court in a trial on an action for negligence, granted an Ind. Rules of Procedure, Trial Rule 50 (TR. 50) motion for judgment on the evidence and ordered

the jury to return a verdict for two defendants-appellees, McMahan-O'Conner Construction Company (McMahan-O'Conner) and the State of Indiana (State). From the granting of that motion and the order, plaintiff-appellant, Phyllis A. Smith (Smith) brings this appeal.

This cause of action arose out of an automobile collision, the circumstances of which are as follows. U.S. 31, a north-south highway, was, on August 15, 1971, in the process of being converted to a four lane divided highway. The west two (southbound) lanes were being used to conduct both north-bound and southbound traffic until the reconstruction of the east two (northbound) lanes was completed.

On this date, the other defendant-appellee, Keith E. Cook (Cook), was proceeding east on S.R. 18 toward its intersection with U.S. 31. Cook testified that at the intersection he observed automobiles approaching from the south but, being unaware that the east lanes of U.S. 31 were closed, assumed they were traveling in the east lanes. He then attempted to cross the west lanes to reach the haven in the median cross-over. As he entered the west lanes, the northbound auto in which Smith was a passenger was unable to avoid the Cook auto and collided with it, resulting in injuries to Smith.

Smith brought an action for negligence against Cook where-upon Cook joined McMahan-O'Conner and State as defendants under Ind. Rules of Procedure, Trial Rule 20 and filed a cross-claim against the latter two parties. Smith filed an amended complaint also alleging negligence on the part of McMahan-O'Conner and State.

At trial, Smith asserted that McMahan-O'Conner and State had negligently failed to mark the intersection and approaches thereto in a manner sufficient to warn motorists that U.S. 31 was under construction and that the west lanes of that high-way were being used for two-way traffic. This, it was alleged, was in non-compliance with the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways (Manual)

adopted for use in Indiana by IC 1971, 9-4-2-1 (Burns Code Ed.). It was further alleged that such failure misled Cook as to the nature of the use of U.S. 31 and that the combined negligence of the three defendants-appellees constituted the proximate cause of Smith's injuries.

Specifically, it is alleged that there was not erected a "Type A" barricade on U.S. 31 at the intersection with S.R. 18, that there was no ROAD CLOSED sign on U.S. 31 at the intersection, that there were no TWO-WAY TRAFFIC signs at the intersection, and that there were no signs on S.R. 18 warning of possible obstruction or restrictions due to highway construction. Smith characterizes these omissions as violations of the Manual and asserts that they constitute "negligence *per se*."

The standard for granting a defendant's motion for judgment on the evidence under TR. 50(A)(1) is that there must be a total absence of evidence or reasonable inference to be drawn therefrom on at least one essential element of the plaintiff's case. *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849.

Smith elected at trial to pursue her case under the theory of "negligence *per se*" for the violation of a safety statute.[2] Thus, the essential elements of Smith's case, as we perceveive them from a distillation of case law, are:

---

2. Although "negligence *per se*" is commonly interchanged with "statutory negligence," negligence *per se* is but one possible aspect subsumed under the more comprehensive heading of statutory negligence That is to say, violation of a statute imposing a duty to do specific act or refrain from specific conduct may, depending upon other circumstances, be negligence *per se*, *prima facie* evidence of negligence, or only evidence of negligence. Foust, *The Use of Criminal Law as a Standard of Civil Responsibility in Indiana*, 35 Ind. L.J. 45 (1959).

The Indiana Supreme Court in *Davison* v. *Williams* (1968), 251 Ind. 448, 455, 242 N.E.2d 101, has said that a plaintiff's proof of defendant's violation of a safety regulation creates a rebuttable presumption of negligence (*prima facie* evidence of negligence) and is not negligence *per se*. Although Smith has characterized the alleged violation by the defendants as negligence *per se*, for the purpose of determining the propriety of the granting of the TR. 50 motion, we do not consider the variance to be critical.

1) The existence of a statute which imposes a specific duty on the part of or prohibits certain conduct by the defendant in relation to a class of persons of which the plaintiff is a member;

2) Violation of that statute by the defendant; and

3) An injury to the plaintiff proximately caused by that violation.

As there are questions of law to be decided by the trial court concerning the elements of the tort of negligence,[3] so there are questions of law to be decided by the trial court concerning the elements of statutory negligence before the case may be submitted to the jury.

First, the court must scrutinize the statute in question and consider "the purpose of the enactment, the persons whom it was intended to protect, and the injuries which it was intended to prevent" to determine if the statute is such that the violation complained of would constitute negligence. *Sheridan* v. *Siuda* (1971), 150 Ind. App. 395 at 406, 276 N.E.2d 883 at 889. In making this inquiry, the trial court is interpreting the statute to ascertain whether a particular duty (or prohibition) exists.

Second, the trial court must determine if "the evidence introduced by the plaintiff at trial is sufficient as a matter of law to enable the jury to find that the plaintiff has established the elements of the cause of action." *Elliott* v. *State* (1976), 168 Ind. App. 210, 342 N.E.2d 674.

It is clear that statutory negligence is not predicated upon any test for ordinary or reasonable care, but rather is founded in the defendant's violation of a specific requirement of law. *Board of Commissioners of Miami County* v. *Klepinger* (1971), 149 Ind. App. 377, 273 N.E.2d 109. The court, in the aforementioned opinion, quoted the fol-

3. *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Elliott* v. *State* (1976), 168 Ind. App. 210, 342 N.E.2d 674.

lowing portion of *Swoboda* v. *Brown* (1935), 129 Ohio St. 512, 196 N.E. 274:

"The distinction between negligence and 'negligence per se' is the means and method of ascertainment. The first must be found by the jury from the facts, the conditions, and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance; the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.

Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal, and, if it proximately results in injury to one to whom a legal duty is owed, the transgressor is liable for the resulting damage. In such case, the jury is not called upon to determine whether the conduct constituted negligence; it determines only whether the act prohibited was committed or the act required by law was omitted, as the case may be. The violator of such specific requirement of law is liable, irrespective of the question as to whether his act is such as is deemed to meet and satisfy the test of ordinary or reasonable care which would be applied in the absence of such statutory definition and imposition of absolute duty, such as, for instance, the absolute and specific requirement as to headlights. Where the standard of duty is thus fixed and absolute, it becomes the same under all circumstances, the failure to observe that requirement is clearly negligence per se. But where duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination or reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase 'negligence per se' has no application."

In its scrutiny of the statute there in question, the court in *Board of Commissioners of Miami County* v. *Klepinger, supra,* was searching for "a specific requirement, specific act, an absolute standard of conduct or an absolute duty which can be determined without considering all the facts and circumstances". So it is that in our survey of decisions, both

from Indiana and from other jurisdictions, that have found statutory negligence, the common thread running through the statutes is the specificity of the conduct required or prohibited.

In the case at bar, the adopting statute, IC 1971, 9-4-2-1 (Burns Code Ed.), is specific and imperative in its language. All governmental agencies within the state responsible for the signing, marking, and erection of all traffic control devices on the streets and highway *shall* adhere to the Manual.

The real inquiry then is whether the Manual itself is sufficiently specific to impose an absolute duty or absolute duties. We think it is not.

It is our observation that the Manual was adopted as a whole for use in Indiana, and the Manual should be treated as a whole in determining its utility as a vehicle for a statutory negligence action. Stated another way, we do not think the Manual should be dissected and an individual determination made as to whether the placement of each kind of traffic control device is or is not governed by a specific and absolute duty. The Manual plainly makes the decision to utilize many devices discretionary. Some examples are the use of a STOP sign or a YIELD sign, the placement of one, two, or three ROAD CONSTRUCTION signs, the use of a BUMP or a DIP sign, and the establishment of speed limits. The utilization of most, if not all, other traffic control devices comprehends the use of some measure of independent judgment on the part of those authorized to place those devices. For instance, the use of independent judgment is implied in the use of a CHURCH sign where *"traffic creates a hazard"*, the use of a HILL sign where conditions *"require special precautions* on the part of drivers", the non-use of ROAD NARROWS signs on *"minor roads* carrying a *low volume* of traffic", or the use of barriers and channelizing devices according to provisions that "are intended, *in general,* to apply to *relatively high-speed, open highway situations."*

The final sentence of the introduction to the Manual states:

"This Manual has been published as a guide and the contents contained herein shall be used by state and local officials in determining the necessity for any traffic control device in their respective jurisdictions."

The Manual claims to be but a guide, and the language contained therein has a flexible quality which seems to bear out that claim.

In sum, we do not find that the Manual generally, or its provisions relating to the devices mentioned in the case at bar, constitute the aforementioned "specific requirement, specific act, and absolute standard of conduct or an absolute duty which can be determined without considering all the facts and circumstances". The Manual simply does not lend itself to a use as the basis for a statutory negligence action; it is only evidence bearing upon the general duty to exercise reasonable care.

Thus, under our analysis, there is a total absence of evidence on the first essential element of statutory negligence—existence of a statute imposing a specific duty.

In the alternative, even if the Manual could support a statutory negligence action, the granting of the TR. 50 motion would still have been proper.

It is our opinion, after a perusal of the provisions and illustrations in the Manual regarding ROAD CLOSED, TWO-WAY TRAFFIC, and ROAD CONSTRUCTION AHEAD signs and "Type A" barricades, that those devices are intended to warn *oncoming* drivers of hazards on the road being traveled. We find no indication that the devices are intended to warn drivers approaching *laterally* on a road of hazards existing on an intersecting road. Indeed, to warn motorists of hazards that do not exist on their route would likely be confusing and engender disregard for all traffic control devices.

We conclude that even if the Manual was conducive to use in a statutory negligence action, the State would be under no

absolute duty to Cook to erect the devices in question, and without the duty imposed, there could be no violation of the statute. *Sheridan* v. *Suida, supra.* Consequently, violation of such a statutory duty will not be available to Smith as the proximate cause of her injuries.

So, under this hypothetical alternative there is a total absence of evidence on the second essential element of Smith's case—violation of the statute.

Having considered the first question of law and determining that the statute in question (the Manual) does not impose a particular duty and, in answer to the second inquiry, having found that Smith failed to introduce evidence at trial sufficient as a matter of law to establish a violation, it follows that the granting of the TR. 50 motion was appropriate.

Finding no error by the trial court in its granting of the TR. 50 motion, we affirm.[4]

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 361 N.E.2d 197.

---

4. As a closing note, we invite the attention of counsel for McMahan-O'Conner to Ind. Rules of Procedure, Appellate Rule 8.2(A)(2).