Antoinette C. CAMPBELL, Plaintiff-Appellant,

v.

CITY OF MISHAWAKA, Defendant-Appellee.

No. 3–1179A321.

Court of Appeals of Indiana, Third District.

June 24, 1981.
Rehearing Denied August 6, 1981.
Transfer Denied Oct. 28, 1981.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, P. C., Kokomo, Edward A. Zych, Matthews-Petsche & Associates, South Bend, for plaintiff-appellant.

R. Kent Rowe, Paul M. Oleniczak, Rowe & Laderer, South Bend, for defendant-appellee.

HOFFMAN, Presiding Judge.

On May 10, 1974 Fourth Street in Mishawaka, Indiana was a one-way street carrying traffic in an easterly direction. A stop sign was posted in the northwest corner of the intersection of Fourth Street and Byrkit Street, indicating that the traffic on Fourth Street was to stop. No stop sign was posted on the southwest corner of the intersection. No stop signs were posted on Byrkit Street requiring the traffic on that street to stop.

On May 10, 1974 Antoinette C. Campbell (Campbell) was driving in the left lane of Fourth Street and was looking directly in front of her in her own lane. She did not look to see if anything was on the northwest corner when she approached the intersection with Byrkit Street. When Campbell was approximately two houses away from the intersection, she noticed a truck traveling on Byrkit Street about a half block away from the intersection. Campbell did not notice any signs indicating that the truck was to stop at the intersection, but since she did not see a stop sign in front of her, she assumed the truck would stop. Campbell proceeded into the intersection without stopping and was hit broadside by the truck and shoved into a parking lot.

Campbell filed a complaint for damages against the City of Mishawaka (City) in the Superior Court of St. Joseph County alleging negligence on the part of the City. On May 24, 1979 a jury returned its verdict against Campbell and in favor of the City of Mishawaka.

Campbell now appeals from a negative judgment raising the following issues:[1]

(1) whether the trial court erred in admitting into evidence, City's Exhibit "H," which was a letter from the defendant's attorney to a defense medical expert with a copy to the City's expert witness, a psychiatrist;

(2) whether the trial court erred in refusing to allow Campbell to introduce her entire deposition into evidence after the City had offered parts of the deposition into evidence;

(3) whether the trial court erred in allowing the jury to have a copy of the written jury instructions in the jury room;

(4) whether the trial court erred in the manner it instructed the jury on considering the instructions as a whole;

(5) whether the trial court erred in giving City's tendered Instructions Nos. 2, 3 and 10 as modified; and

(6) whether the trial court erred in refusing Campbell's tendered Instructions Nos. 3, 4, 6, 7, 8 and 9.

A party appealing from a negative judgment must establish that the evidence is without conflict and leads to but one conclusion, that which was not reached by the court below. Upon review of a negative judgment, the Court of Appeals will not reweigh the evidence nor resolve issues of credibility, but will view the evidence in the record most favorable to the judgment. *Massey v. St. Joseph Bank and Trust Co.* (1980), Ind.App., 411 N.E.2d 751.

The first issue raised by Campbell is whether or not the trial court erred in admitting into evidence City's Exhibit "H," which was a letter from the City's attorney to Dr. Arens, a defense medical expert, with

---

1. The issues have been consolidated.

a copy to the psychiatrist who was City's expert witness. Campbell contends that admission of the letter violated the hearsay rule and gave the jury a bad impression of her character.

In order to violate the hearsay rule of evidence, the letter must have been offered in court for the truth of the matter asserted therein. *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269. City argues the letter was not introduced for such a purpose.

A review of the content of the letter, however, reveals that this Court need not decide this question. The subject matter of the letter discusses Campbell's injuries. Since the severity of Campbell's injuries is evidence which goes to the issue of damages and the jury decided in favor of the City, then it is clear that the jury never decided the question of damages. Thus, this Court cannot review this matter on appeal.

The next issue raised by Campbell was whether the trial court erred in refusing to allow her to introduce her entire deposition into evidence after the City had offered parts of the deposition into evidence. The trial court did allow Campbell to introduce parts of her deposition which were relevant to the parts introduced by the City.

No error resulted from this procedure. It has been decided in Indiana that no error occurs when a trial court permits a party to present selected portions of depositions to the jury and excludes parts of the deposition. *Manning v. Allgood* (1980), Ind. App., 412 N.E.2d 811; *Wynder v. Lonergan* (1972), 153 Ind.App. 92, 286 N.E.2d 413.

Campbell next contends that the trial court committed reversible error in allowing the jury to have a copy of the written jury instructions in the jury room.

Before honoring the jury's request for the jury instructions in printed form, the jury had heard the instructions read in open court twice. The jury foreman advised the judge that the jury did not wish to have the instructions read a third time as this would not be helpful, and it desired to have the instructions in printed form for use in the jury room.

Both this Court and the Indiana Supreme Court have decided that generally, jury instructions are not to be sent to the jury room, but a trial court's action in doing so may be harmless error if the instructions are first read in open court in the presence of the parties and their attorneys. *Jameison v. State* (1978), 268 Ind. 599, 377 N.E.2d 404; *Snelling v. State* (1975), 167 Ind.App. 70, 337 N.E.2d 829. In *Snelling v. State, supra,* a survey of Indiana law revealed that the procedure of instructing juries only by reading instructions in open court was actually a procedure established primarily by custom. Earlier courts believed that oral instructions would put jurors on a more equal basis. However, in light of today's educational standards, it may well be that giving the jury written copies of instructions which have been read in open court may promote equality more than relying on equally retentive memories. *Snelling, supra,* 337 N.E.2d at 836.

While it has been noted in previous cases that a legislative enactment or a court rule would be necessary to change the law if it were to be *required* of trial courts that they send written copies of the instructions to the jury, "[t]his is not to say that it is erroneous or contrary to law for a trial court in the exercise of its discretion to follow that practice." *Snelling, supra,* 337 N.E.2d at 836.

The crucial requirement seems to be that the instructions first be read in open court in the presence of the parties and their attorneys. Since the trial court did so here, it was not error to send written copies of the instructions to the jury.

Another issue raised by Campbell was whether the trial court erred in the manner in which it instructed the jury on considering the instructions as a whole. Both times the instructions were read in open court, no such instruction was given.

Not until it was decided to send written instructions into the jury room did Campbell request an instruction be given on considering the instructions as a whole. The trial judge instructed the jury orally to consider the instructions as a whole when he entered the jury room to give it the written instructions and he included such an instruction with the other written instructions.

While the trial court technically committed an error by not reading this instruction in open court with the parties and their counsel present, the error in this case appears to be harmless. This was not an instruction on Campbell's theory of the case. Rather, it was a general instruction on law about which there is no dispute. The instruction was given to the jury both orally and in writing. When an error does not affect substantial rights of the complaining party, such error will be considered harmless and not be grounds for reversal. *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232.

It is well established in Indiana law that the appellant has the burden of showing prejudice from the error. *Com'r, Ind. State Highway Dept. v. Collins* (1980), Ind. App., 413 N.E.2d 982. Campbell has not met this burden. As to instructions, no reversible error exists where the jury has not been misled and an examination of the record shows the verdict under proper instructions would not have been different. *Lewis v. Davis* (1980), Ind.App., 410 N.E.2d 1363; *Pardue v. Seven-Up Bottling Co. of Indiana* (1980), Ind.App., 407 N.E.2d 1154.

Campbell contends that prejudice resulted because the jury reached a verdict within 20 minutes from the time it received the written instructions, a task she alleges is physically impossible if all the instructions were read by it. Thus it must have concentrated on one particular instruction and this limited consideration was prejudicial to her.

The only evidence in the record as to the amount of time which elapsed from the time the jury received the written instructions until it returned its verdict is conflicting. Campbell's attorney stated in an affidavit that 20 minutes elapsed, while the trial judge stated in an affidavit that 45–55 minutes elapsed. This Court will not weigh evidence. Nowhere in the record is there any evidence as to the length of time it would take the jury to read all of the instructions. Campbell has not met her burden of establishing prejudice and thus, the error committed was harmless.

The remaining errors alleged by Campbell all pertain to individual jury instructions. Campbell argues it was error for the trial court to give City's tendered Instructions Nos. 2, 3, and 10, all as modified.

Concerning Instruction No. 2, Campbell contends first that it is repetitious and incomplete. A review of the instructions given proves these arguments to be without merit.

Then Campbell argues that it was error to give both No. 2 and No. 3 because certain terms in the instructions were not defined. It is the general rule that it is error for the trial court to refuse to define in its instructions technical and legal phrases in connection with material issues of the lawsuit, if the court is properly requested to do so. *Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917. However, in the cause before us, the trial court was not properly requested to do so. Campbell tendered no instructions to define the terms which now concern her. If a litigant desires a definition of terms or a more detailed instruction, that party has the burden of submitting the requested instruction. *In re Estate of Beck v. Campbell* (1968), 143 Ind.App. 291, 240 N.E.2d 88; *Peckham v. Smith, a Minor, etc.* (1960), 130 Ind.App. 452, 165 N.E.2d 609. Failure to do so waives the right to object to that point not being covered. *Anderson v. Taylor* (1972), 154 Ind.App. 217, 289 N.E.2d 781.

Campbell argues that Instruction No. 10 was irrelevant, misleading and misapplied to the issues.

Instruction No. 10, as amended, reads as follows:

"At all times material hereto there was in full force and effect a Statute of the State of Indiana which provided in pertinent part as follows:

9–4–1–110 [47–2118]. Local authorities may designate through highways and erect stop or yield signs at specified entrances thereto or may designate any intersection as a stop or yield intersection and erect like signs at one or more entrances to such intersection.

(b) Every stop sign shall bear the word 'stop' in letters not less than eight (8) inches in height. Every stop sign and every yield sign shall be erected as near as practicable to the nearest line of the crosswalk on the near side of the intersection, or, if there is no crosswalk, then as near as practicable to the nearest line of the intersecting roadway.

(c) Every driver of a vehicle shall stop or yield in obedience to any such sign as the case may be, before entering such intersection except when directed to proceed by a police officer or traffic control signal.

"If you find from a preponderance of the evidence in this case that the plaintiff, Antoinette Campbell, violated the provisions of this statute which I have just quoted, without justification or excuse, then you may find that such violation constitutes negligence on her part."

Campbell does not dispute that this instruction is a correct statement of the law. Due to the fact that the City raised the defense of contributory negligence in this cause, this instruction is relevant to the issue raised, applicable to the facts presented and is not misleading.

Finally, Campbell alleges the trial court erred in refusing her tendered Instructions Nos. 3, 4, 6, 7, 8 and 9. She contends that she was not allowed to have an instruction on her theory of the case and she was entitled to such.

██ It is true that a party is entitled to have an instruction based on his/her theory of the case if it is within the issues and if there is any evidence fairly tending to support it. *State v. Maudlin* (1981), Ind.App.,

416 N.E.2d 477; *Whitaker v. St. Joseph's Hospital* (1981), Ind.App., 415 N.E.2d 737. However, Campbell's brief makes it unclear as to just what Campbell's theory of the case was.

The record and the instructions which were refused indicate that Campbell's theory of the case was that the City was negligent for not posting a stop sign in the southwest corner of the intersection on Fourth Street, the one-way street. However, Campbell's brief states that her theory of the case was summed up in her counsel's final argument and it is that the sign on Fourth Street was not supposed to be there but should have been changed to make Byrkit a stop street. If the latter is really Campbell's theory of the case, then the refused instructions were not applicable to that theory in that they dealt with signing of one-way streets.

██ In reviewing a trial court's refusal of tendered instructions, an appellate court must determine whether the tendered instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction and whether the substance of the tendered instruction is covered by other instructions which are given. *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628.

██ Both Instructions Nos. 3 and 4 have to do with the *Indiana Manual on Uniform Traffic Control Devices for Streets and Highways.* IC 1971, 9–4–1–1—9–4–1–138 (Burns Code Ed.) is Indiana's adoption of the Uniform Act Regulating Traffic on Highways. Instructions Nos. 3 and 4 were attempts to establish a statutory duty on the part of the City to post certain signs on Fourth Street at its intersection with Byrkit. The language from the *Manual* which is included in the instruction is not mandatory language. Furthermore, the Court decided previously that the adoption of the *Manual* did not impose such duties as to make violation of it a basis for finding statutory negligence. *Smith v. Cook et al.* (1977), 172 Ind.App. 610, 361 N.E.2d 197.

At the beginning of the trial the trial court instructed the jury that Campbell claimed the City was negligent in failing to place a stop sign on both corners of the intersection when applicable federal and state laws and safety standards required the City to do so. The trial court also instructed the jury that Campbell claimed the City was negligent in failing to warn her of the hazard involved as she approached the intersection. However, at the end of the trial, the trial court determined as a matter of law that neither of those theories of recovery were supported by the evidence and removed those claims from the jury's consideration.

Since these theories were taken away from the jury's consideration, Instructions Nos. 3 and 4 were not applicable to the issues before it.

Instruction No. 6 was a "sudden emergency" instruction. Campbell contends that once she was in the intersection, she swerved to the right to avoid the truck which was approaching from the left, thus her swerving was a result of being put in "sudden peril." "Sudden emergency" instructions are generally tendered on a theory in defense of negligence.

However, based upon the facts in this cause of action, any negligence on Campbell's part arose when she entered the intersection, before any so-called "sudden emergency" existed. The City did not allege she was negligent in swerving to avoid the truck, but rather that she was negligent in not stopping at the intersection. Therefore, Instruction No. 6 is not applicable to the evidence presented.

Campbell's tendered Instruction No. 7 is an instruction on proximate cause. In addition to being worded in a confusing fashion, it is questionable whether or not it is a correct statement of the law. Campbell argues the instruction is based upon the case of *City of Indianapolis v. Evans* (1940), 216 Ind. 555, 24 N.E.2d 776. However, the language used in *Evans* provides that the injured party be "free from fault." *Evans, supra,* at 779. This phrase is conveniently left out of Campbell's instruction.

In addition, it is clear from the record that the subject of proximate cause was covered in other instructions, in particular, Instruction No. 5.

Instruction No. 8 explained the concepts of actual or constructive knowledge as applied to the facts of the case. Campbell contends this instruction was crucial to showing the jury she did not have to prove the City had *actual* knowledge that no stop sign was beside the left-hand lane, but could recover if there was constructive knowledge.

The instruction refers to a "dangerous condition." The only "dangerous condition" argued is the absence of a stop sign beside the left-hand lane. Since it was stipulated by the parties that no sign existed there and the trial court advised the jury of this stipulation, it seems clear that Campbell did not have to prove either actual or constructive knowledge. The knowledge was stipulated and no prejudice could have resulted from refusing this unnecessary instruction.

In addition, the substance of the instruction is covered in other instructions, particularly Instruction No. 2.

Finally, Campbell's tendered Instruction No. 9 was refused by the trial court. Campbell argues this was an instruction on common-law negligence. Common-law negligence was well covered in other instructions, in particular, Instruction No. 4. Therefore, the trial court properly refused Campbell's tendered Instruction No. 9, as it would have been repetitious.

Having found no reversible error, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs with opinion.

STATON, J., concurs in result.

GARRARD, Judge, concurring.

I concur in the result reached by the majority but my analysis differs concerning the first two issues, viz. the introduction of the letter into evidence and the refusal to allow all of plaintiff's deposition to be introduced.

Before addressing those issues I deem it necessary to mention another problem. The transcript as submitted by the appellant exhibits a deficiency which we see with some regularity. The table of contents prepared by counsel and inserted at the beginning of the transcript does not contain references to the witnesses and evidence introduced at trial. The only index to the bill of exceptions containing the evidence is that prepared by the court reporter. It is located in the middle of the transcript where her work begins and the page references are not those of the pages as they appear and are numbered in the transcript. This, of course, does not comply with the requirements of Indiana Rules of Procedure, Appellate Rule 7.1(C) that the table of contents refer to the initial page of "witnesses on direct, cross and redirect examination, offers to prove, objections and the like in such a manner as to allow the court to locate matters placed in issue upon the appeal."

The problem occasioned by this departure is compounded by appellant's failure to make marginal notations on *all* pages of the transcript (AP 7.2(A)(3)), and the failure in the argument portion of the brief to cite either the pages in the record where the issue appears (AP 8.3(A)(7)) or to state verbatim the question, objection, answer, etc.

We are hopefully past the day when the technical infraction of one of the appellate rules on form will result in automatic affirmance of the trial court's decision. Yet the rules are adopted for a purpose and prior cases have noted that they bind us as well as the litigants. Accordingly, it is my view that where such defaults actually impede the court's review of an alleged error, it is proper to deem that error waived for the failure of counsel to present cogent argument or his failure to carry his burden of demonstrating harmful error.

I cannot agree with the majority that the letter introduced as Exhibit "H" concerns only damages and therefore presents no issue. A portion of the letter questions the basic credibility of the plaintiff. I do agree that no error is present.

On cross-examination of Dr. Eades, plaintiff's counsel attempted to insinuate that he was a "hired gun" for the defense whose testimony was purchased to defeat plaintiff's claim. The letter sent by defense counsel to both Dr. Eades and Dr. Arens in February 1979 instructed them that the object of their examinations was to determine "what is truthfully at the base of this woman's problems." The trial court acted within the proper ambit of his discretion in determining that the plaintiff had effectively opened the door to permit the evidence.

As to that portion of the letter which was objectionable, any potential error was waived when plaintiff failed to object to that specific portion of the letter. *City of Logansport v. Dykeman* (1888), 116 Ind. 15, 17 N.E. 587; McCormick on Evidence (2nd Ed.) § 52, p. 117.

Concerning the second issue I do not disapprove of the majority's rule although I do not find authority for it either in the trial rules or the two cases cited.

On cross-examination of the plaintiff, counsel for the city inquired about certain questions asked and her responses thereto in a deposition. Her answers at trial concerning her prior testimony were noncommittal. Therefore, to establish impeachment the defendant introduced those parts of her deposition into evidence during its case in chief. On rebuttal the plaintiff sought to introduce the entire deposition into evidence. The court rejected this offer but permitted introduction of those parts which were relevant to the portions introduced by the city.[1]

Trial Rule 32(A)(4) provides,

"If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and *any party may introduce any other parts.*" (Emphasis added)

The rule rather plainly says that when the city introduced part of the deposition,

1. Interestingly, appellant's argument accepts the characterization of the parts allowed.

the plaintiff was entitled to introduce the rest, to the extent, of course, that the rest was properly admissible. *See* TR 32(A).

*Wynder v. Lonergan* (1972), 153 Ind.App. 92, 286 N.E.2d 413 simply held that pursuant to TR 32(B) and (D)(3) it is proper to exclude those portions of a deposition which attempt to present inadmissible evidence. *Manning v. Allgood* (1980), Ind.App., 412 N.E.2d 811 concerned an argument over how much of a deposition should be required to be presented by the party originally attempting to use it. The opposing party did, in fact, introduce the balance of the deposition. Both cases fall short of the majority's intimation that the trial court may elect to exclude a portion of a properly offered deposition.

I suppose, as urged by city's counsel at trial, that we could construct a special rule to contemplate the situation where a deposition is utilized only for impeachment purposes. That, however, I find unnecessary.

When the city introduced a portion of her deposition, the plaintiff was entitled to introduce the balance. The trial court committed error when it refused the offer. The error was, however, clearly harmless. The plaintiff testified in full in person at the trial. She had full opportunity to explain the allegedly impeaching portion of the deposition in redirect examination. Moreover, the *relevant* additional portions of the deposition were admitted on rebuttal. Under such circumstances there was no *harmful* error committed. TR 61.

I concur with the majority as to the other issues presented.

