INDIANA STATE HIGHWAY
COMMISSION, Appellant
(Defendant Below),

v.

DAILY EXPRESS, INC., Appellee
(Plaintiff Below).

No. 32A01–8605–CV–123.

Court of Appeals of Indiana,
First District.

Feb. 18, 1987.

Linley E. Pearson, Atty. Gen., Stephen C. McNutt, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

Franklin A. Safrin, J. Richard Kiefer, Indianapolis, for appellee.

ROBERTSON, Judge.

This case comes to us on appeal from a judgment rendered in favor of Daily Express, Inc. (Daily), appellee-plaintiff, against the Indiana State Highway Commission (State), appellant-defendant.

We reverse.

Daily specializes in the interstate transportation of over-dimensional freight by truck. In June of 1981, the State closed one lane of Interstate 70, east of State Road One, in Wayne County for resurfacing. Daily sent a semidriver pulling a "wide load" eastbound on I–70. West of S.R. 1, the driver encountered a sign directing wide loads to exit at the next right. Daily's driver followed the directive, exiting I–70 onto S.R. 1. With no further direction from the State, the driver then proceeded south on S.R. 1 to U.S. 40, traveling eastbound to Centerville where he discovered a "trailblazer" sign which indicated a left turn back to I–70. The driver took the turn. His load became "hung up" on a railroad crossing and "bellied out." Before the truck and load could be freed from the track, it was struck by a Conrail train. At trial, Daily recovered on a negligence theory, the jury assessing damages in the amount of $60,568.72.

The State raises several issues for our review. We find one issue, consolidated and restated to be dispositive:

Did the trial court err in instructing the jury that if it found the State violated the provisions of IND.CODE 9–4–2–1 or 9–4–1–30 without excuse or justification, and such violation proximately caused the damages resulting in the case, it could find for the plaintiff?

Daily tendered and the trial court gave these instructions, respectively, to the jury:

You are instructed that at the time of the accident, there was in full force and effect the following statute of the State of Indiana, which provides as follows:

I.C. 9–4–2–1 Manual; scope

Sec. 1. The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways shall be adhered to by all governmental agencies within the state responsible for the signing, marking and erection of all traffic control devices on all streets and highways within the state. The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways shall substantially conform with the Manual on Uniform Traffic Control Devices for

Streets and Highways, 1961 Edition, and the Manual for Signing and Pavement Markings for the National System for Interstate and Defense Highways 1962 Edition, and all other manuals and revisions to the above manuals having the concurrence of the federal highway administrator. All future revisions to the above mentioned manuals may be considered to become a part of the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways, if concurred in by the Indiana state highway commission and made a part of the manual by lawful promulgation. The Indiana state highway commission may add control devices to the state manual in those areas where the federal standards are silent.

If you find from a preponderance of the evidence that the Defendants, State of Indiana and Indiana State Highway Commission, violated any provision of this statute without excuse or justification, and which violation was a proximate cause of the damages resulting in this case, then you may find for the Plaintiff, Daily Express, Inc., and against the Defendants.

You are instructed that the Manual on Uniform Traffic Control Devices is simply a guide. It allows for individual discretion or choice by the governmental entity in the use or non-use of traffic control devices in the State of Indiana.

The trial court gave an instruction identical to the instruction on I.C. 9–4–2–1 but instead containing I.C. 9–4–1–30. I.C. 9–4–1–30 reads as follows:

I.C. 9–4–1–30 Manual and specifications; Sec. 30. The department of highways shall adopt a manual and specifications for a uniform system of traffic control devices consistent with and supplemental

to the provisions of this chapter, for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system current as approved by the American Association of State Highway Officials. The department of highways shall from time to time, as it deems necessary, revise, correct and keep up to date, this manual. *As amended by Acts 1980, P.L. 74, SEC. 370.*

■ The State argues that the Indiana Manual on Uniform Traffic Control Devices is not a proper subject for a statutory negligence instruction, relying upon this district's decision in *Smith v. Cook* (1977), 172 Ind.App. 610, 361 N.E.2d 197.[1] It further argues that the instructions cited above are not correct statements of the law, are misleading, and prejudicial to the State. We agree.

■ Before a trial court may submit a case to the jury on a negligence theory, it must determine first, whether the law recognizes any obligation on the part of the particular defendant to conform its conduct to a certain standard for the benefit of the plaintiff, and second, if the law does recognize such a duty, whether the evidence presented by the plaintiff was sufficient as a matter of law to enable a jury to find that the plaintiff established the elements of a cause of action. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 705. The existence of duty is thus a legal question, to be determined by the court, not the jury. *Id.*

■ As we have recognized on several occasions, the State does have a general duty to exercise reasonable care in designing, constructing and maintaining its highways for the safety of public users. *El-*

---

1. We note from a perusal of the record that other provisions of the Indiana Code, not the subject of this appeal, were utilized as a basis for a statutory negligence instruction. We state no opinion as to the appropriateness of these Indiana Code sections in such an instruction, but direct the parties to the applicable test for determining whether these sections will support a statutory negligence claim. *See, Smith v.*

*Cook,* 361 N.E.2d at 199–200. Additionally, these statutory negligence instructions should inform the jury, in substance, of any possible excuse or justification which might be applicable to the case and how such an excuse or justification would affect the parties' respective burdens of proof. For a model instruction, *see, Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101 at 106.

*liott v. State* (1976), 168 Ind.App. 210, 342 N.E.2d 674; *State v. Clark* (1978), 175 Ind. ·App. 358, 371 N.E.2d 1323; *State v. Thompson* (1979), 182 Ind.App. 121, 394 N.E.2d 215; *State v. Magnuson* (1986), Ind.App., 488 N.E.2d 743. However, we have also determined that no additional, *specific* duty arises from the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways.

In *Smith v. Cook* (1977), 172 Ind.App. 610, 361 N.E.2d 197, we interpreted I.C. 9–4–2–1, the provision which mandates the adoption of the Manual for use in Indiana, to determine whether proof of violation constituted statutory negligence, i.e. negligence as a matter of law. We concluded that the Manual does not lend itself for use as a basis for a statutory negligence action because it was not intended and does not generally impose the kind of specific requirements or absolute standards of conduct necessary to establish *prima facie* evidence of negligence. *See, generally, Smith v. Cook, id.* 361 N.E.2d at 199, n. 2 and *Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101. We held that the manual is only *evidence* bearing upon the general duty to exercise reasonable care. *Id.* Accordingly, if a failure to comply with the Manual's provisions is only evidence of negligence, the jury should be instructed to treat the Manual as any other evidence of negligence going into the ultimate factual determination of liability.

Daily has neither distinguished our decision in *Smith v. Cook,* 361 N.E.2d 197, nor given us a reason for reconsidering that decision. Rather, Daily seems to be arguing that the State had a ministerial duty to act responsibly after it placed signs on I–70 for wide loads. Daily then cites *Harvey v. Board of Commissioners of Wabash County* (1981), Ind.App., 416 N.E.2d 1296. While we find there the propositions that liability for failure to perform ministerial acts may be imposed if violation of a statute or rule is established, and the statutory requirements binding county officials are found in the manual, *id.* at 1301, we must point out that *Harvey* only addresses Wabash County's immunity from liability un-

der the Tort Claims Act, I.C. 34–4–16.5–3. Whether a governmental entity is affirmatively immune from any liability whatsoever, and whether the standard of reasonable care has been legislatively established for purposes of a statutory negligence cause of action are obviously two distinct inquiries. As the court in *Harvey* did not undertake an analysis of the Manual for purposes of determining whether the legislature intended the Manual to define the standard of reasonable care, we do not view *Harvey* as binding precedent on this issue.

 In the present case, the trial court instructed the jury in part, that if it found the State violated the statutory provision, without excuse or justification, it could find for the plaintiff. This language creates a presumption of negligence, which may be rebutted by the defendant by showing it acted as a reasonably prudent person under the same circumstances.

The instruction unequivocally defines negligence as a matter of law. *See, Davison,* 242 N.E.2d at 101; *Blankenship v. Huesman* (1977), 173 Ind.App. 98, 362 N.E.2d 850, 852. Though not mandatory in form, the language is substantially similar to that rejected by the Appellate Court in *Board of Commissioners of Miami County v. Klepinger* (1971), 149 Ind.App. 377, 273 N.E.2d 109, 113, as being too imprecise in a situation calling for an ordinary negligence charge, and identified by the Seventh Circuit in *Brandes v. Burbank* (7th Cir. 1980) 613 F.2d 658 as part of a correct statement of statutory negligence in Indiana. The word "violation" connotes some specific duty, act or requirement that is so defined and ascertainable as to be capable of being violated as a matter of law without referring to all of the evidence of circumstances surrounding the incident. *Klepinger,* 273 N.E.2d at 113. In addition to the inclusion of the word "violation", the instructions on I.C. 9–4–2–1 and 9–4–1–30 contain the language "without excuse or justification" indicative of the statutory negligence exception recognized in *Larkins v. Kohlmeyer* (1951), 229 Ind. 391, 98

N.E.2d 896 and discussed extensively by the Indiana Supreme Court in *Davison v. Williams* (1968) 251 Ind. 448, 242 N.E.2d 101.

■ The two instructions under consideration are erroneous because they each invite the jury to find that the Manual establishes the standard of reasonable care, subject to a showing of excuse or justification. Prejudice from an erroneous instruction is presumed unless the contrary affirmatively appears. In considering the effect of an erroneous instruction, this court assumes that the error influenced the result unless it appears from some part of the record that the verdict under proper instructions could not have been different. *American Employers Insurance Co. v. Cornell* (1948), 225 Ind. 559, 76 N.E.2d 562. The jury in the instant case was presented with at least two varieties of a negligence theory, ordinary negligence and statutory negligence, the distinction being in the weight to be given to the Manual's guidelines. We cannot conclude that the jury would have returned the verdict it did, had it been properly instructed to evaluate the manual as it would any other evidence going into the determination of whether the State exercised the care of a reasonably prudent person under same or similar circumstances.

Having determined that the instructions under consideration erroneously presented to the jury a statutory negligence theory, and as it is apparent the verdict could have been different, we conclude that reversal is proper.

Judgment reversed and remanded for a new trial.

NEAL, J., concurs.

YOUNG, J., dissents without opinion.